NORTHROP'S EX'RS v. RASNER *et al.*

*(Circuit Court, W. D. Pennsylvania. December 10, 1891.)*

1. PATENTS FOR INVENTIONS—INVENTION—METALLIC CEILINGS.
   Letters patent No. 330,916, issued November 24, 1885, to Albert Northrop, is for a metallic ceiling, composed of panels having curved mouldings on the sides which interlock with each other, the mouldings at the corners being cut away, leaving an opening which is filled with a rosette, the panels being secured to the furring strips by fastenings passed through the curved mouldings, and these mouldings also forming channels for discharging any water which may leak through from above. *Held,* that the device shows patentable invention.

2. SAME—EXTENT OF CLAIMS—PRIOR ART.
   But, in view of the prior state of the art, the claims covering this invention must be strictly construed.

3. SAME—INFRINGEMENT.
      These claims are not infringed by a ceiling composed of panels having flat edges
      designed to overlap each other, and to be secured to the furring strips by nails,
      and having mouldings situated inside the edges, and rosettes at the corners of the
      panels.

In Equity. Suit by the executors of Albert Northrop against Rasner and Dinger for infringement of a patent. Bill dismissed.

*W. Bakewell & Sons,* for complainants.

*D. F. Patterson,* for defendants.

REED, J. The bill alleges infringement of letters patent No. 330,916, being for an improvement in metallic ceilings, issued November 24, 1885, to Albert Northrop, the complainants' testator. The ceiling constructed under this patent is composed of panels, each panel having a moulding on each of its sides. As stated in the specification:

"Each moulding is curved so as to form a channel, and, as the mouldings are counterparts of each other, the moulding on the edge of one panel will fit within the moulding on the adjacent edge of an adjoining panel, and hence any number of the panels may be interlocked with one another. The mouldings at the corners of the panels are cut away, and hence when the panels are put together an opening is formed at the junction of the corners of four panels."

At the corners rosettes are fastened to conceal the openings, and the panels are secured to the ceiling or to furring strips by fastenings passing through the curved channels. When put in place there is formed between the panels, by the curved mouldings, gutters or channels into which any water leaking from above will gather, running off at the openings at the corners of the panels without injury to the ceiling. Another form of panel is also described in the specification, having curved mouldings on two edges, and upon the opposite edges straight flanges, so that, when put together, the flange of one panel rests in the curved moulding of the adjoining panel. There is thus formed a gutter for the collection of leaking water, which runs off at the panel corners, and at the same time, as stated in the specification, provision is made for expansion and contraction of the panels, the flange resting loosely in the curved moulding. Defense is made that the patent is invalid for lack of invention, in view of the prior state of the art, and reference has been made to certain patents for metallic roofing. Without discussing this defense at length, I need only say that my conclusion is that the patent shows invention, and that the presumption of validity has not been overcome by the defendants.

The 1st, 5th, and 6th claims of the patent are alleged to be infringed by defendants' ceiling. They are:

"(1) A metallic ceiling, consisting of panels, each having a curved or channeled moulding on its four sides, the mouldings being cut away at the corners of the panels, substantially as set forth." "(5) A metallic ceiling, consisting of panels having their sides (two or more) provided with channeled mouldings, the corners of the panels being cut away, substantially as set forth. (6) A metallic ceiling consisting of panels, each having a curved or channeled moulding on two or more of its sides, the panels being cut away at the corners, and rosettes for covering and concealing said cut-away portions, substantially as set forth."

In view of the prior state of the art, and of the patents referred to, improvements in the kindred art of metallic roofing, these claims must be strictly construed. The defendants' ceiling, which it is alleged infringes, is constructed of panels. These panels are stamped into the shape desired for use, and, in the exhibits presented on argument, have an ornamental center surrounded by moulding, outside of which is a flat edge, called by defendants' witnesses a "stile." In putting up the ceiling, furring strips are first nailed to the joists, and the panels are nailed to the furring strips, the flat edges or stiles overlapping in such manner that the joinder of the panels is concealed. At each corner is inserted a rosette, which serves no other purpose, apparently, than that of ornamentation. No channel is formed by the edges of the panels for the purpose of carrying leaking water from above to any place to discharge, although, doubtless, the edges of the panels and the corner openings, where the rosettes are inserted, being lower than the main body of the panel, water would run to these points and leak through. The edges of the panels, however, fit closely to the furring strip, so that no open channel is formed by the edges. In its construction the ceiling is more like the construction of the roof under the patent issued to Robert Sanderson, No. 120,900, in evidence, than like that under complainants' patent. To hold the defendants' ceiling an infringement of the claims of complainants' patent would seem to require the finding that the latter patent is anticipated by the Sanderson patent, at least to the extent that no invention was involved in the complainants' ceiling. But I think they are not alike, and do not think the defendants' ceiling an infringement upon the complainants' claims. The defendants' ceiling can be constructed quite as well with flat panels, overlapping at the edges, and nailed to the furring strips, as it can with panels containing the ornamental stamping. The curved mouldings used by defendants are within the panel, and not on its four sides, nor are the mouldings cut away at the corners of the panels, as set forth in the claims. It may be, as argued by complainants' counsel, that the word "mouldings," as ordinarily used, is broad enough in meaning to include what the defendants term a "stile;" but as used in complainants' patent it refers to a specific thing, namely, the curved or flanged edge of the panel, which interlocks with that of the adjoining panel, and which is the peculiarity of construction of a ceiling under complainants' patent. This I do not find in defendants' ceiling. In my judgment, there has been no infringement, and the bill must be dismissed, with costs. Let a decree be drawn accordingly.